**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| JAMES FUTRELL and APRIL BROWN, each individually and on behalf of all others similarly situated,<br><br>v.<br><br>CARGILL, INCORPORATED | **Case No. 22-cv-969**<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action |

**PLAINTIFFS' ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

### Summary

1. Like many other companies across the United States, Cargill's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Cargill's organization.

3. As a result, Cargill's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4. James Futrell and April Brown are two such Cargill workers.

5. Cargill could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Cargill did not pay its non-exempt hourly and salaried employees their full overtime premium for all overtime hours worked, as required by federal law.

7. Cargill pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Cargill made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Cargill's failure to pay wages, including proper overtime, for all hours worked to its workers across the United States violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Cargill's failure to pay wages, including proper overtime, for all hours worked to its workers in Wisconsin also violates Wisconsin's Wage Payment and Overtime Law, Wis. Stat. §§ 103, 104, 109.01 *et seq.*

11. Futrell and Brown bring this lawsuit to recover these unpaid overtime wages and other damages owed by Cargill to them and Cargill's other non-overtime-exempt workers like them, who were the ultimate victims of not just the Kronos hack, but Cargill's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Cargill to all these workers, along with the penalties, interest, and other remedies provided by federal and Wisconsin law.

### JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Cargill is headquartered in this District.

## PARTIES

16. **Plaintiff James Futrell** is a natural person.

17. Futrell was, at all relevant times, an employee of Cargill.

18. Futrell has worked for Cargill since October 2021.

19. **Plaintiff April Brown** is a natural person.

20. Brown was, at all relevant times, an employee of Cargill.

21. Brown has worked for Cargill since April 2019.

22. Brown worked for Cargill in Wisconsin.

23. Futrell and Brown represent at least two groups of similarly situated workers for Cargill.

24. Futrell and Brown represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Cargill (including its subsidiaries and alter egos) who worked for Cargill in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

25. Brown represents a class of similarly situated workers under Wisconsin law pursuant to Federal Rule of Civil Procedure 23. This "Wisconsin Class" is defined as:

> **All current or former non-exempt employees of Cargill (including its subsidiaries and alter egos) who worked for Cargill in Wisconsin at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

26. Throughout this Complaint, the FLSA Collective and Wisconsin Class members are referred to jointly as the "Similarly Situated Workers."

27. **Defendant Cargill, Incorporated ("Cargill")** is a domestic corporation.

28. Cargill maintains its headquarters and principal place of business in this District.

29. Cargill may be served by service upon its registered agent, **United Agent Group, Inc., 5200 Willson Rd., #150, Edina, MN 55424**, or by any other method allowed by law.

30. At all relevant times, Cargill exerted operational control over its subsidiaries and alter egos.

31. At all relevant times, Cargill substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

32. At all relevant times, Cargill had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

33. Cargill's subsidiaries and alter egos include, but are not limited to, Cargill Cotton, Cargill Cocoa & Chocolate, Cargill Kitchen Solutions, Cargill Lumber, Cargill Meat, Cargill Ocean Transportation, Diamond Crystal Salt, NatureWorks, Provimi, and Truvia.

34. Cargill employed and/or jointly employed, with its subsidiaries and alter egos, Futrell, Brown, and the Similarly Situated Workers.

35. Cargill and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

36. Cargill and its subsidiaries and alter egos are joint employers for purposes of Wisconsin law.

37. Throughout this Complaint, Cargill and its subsidiaries and alter egos are referred to jointly as "Cargill."

## COVERAGE UNDER THE FLSA

38. At all relevant times, Cargill was an employer of Futrell and Brown within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. At all relevant times, Cargill was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40. Cargill was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

41. During at least the last three years, Cargill has had gross annual sales in excess of $500,000.

42. Cargill was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

43. Cargill employs many workers, including Futrell and Brown, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

44. The goods and materials handled, sold, or otherwise worked on by Futrell, Brown, and other Cargill employees and that have been moved in interstate commerce include, but are not limited to, office equiptment and supplies, food, and beverages.

**FACTS**

45. Cargill is a food corporation.

46. Cargill is the largest privately held corporation in the United States in terms of revenue. Forbes, America's Largest Private Companies, #1 Cargill, https://www.forbes.com/companies/cargill/?list=largest-private-companies&sh=3b1df8871960 (last visited Apr. 15, 2022).

47. Cargill employs more than 150,000 workers. Cargill, About Cargill https://www.cargill.com/about (last visited Apr. 15, 2022).

48. Many of Cargill's employees are non-exempt hourly and salaried workers.

49. Since at least 2021, Cargill has used timekeeping software and hardware operated and maintained by Kronos.

50. On or about December 11, 2021, Kronos was hacked with ransomware.

51. The Kronos hack interfered with the ability of its customers, including Cargill, to use Kronos's software and hardware to track hours and pay employees.

52. Since the onset of the Kronos hack, Cargill has failed to keep accurate track of the hours that Futrell, Brown, and the Similarly Situated Workers have worked.

53. Instead, Cargill has used various methods to estimate the number of hours Futrell, Brown, and the Similarly Situated Workers have worked in each pay period.

54. For example, Cargill issued paychecks based on their scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

55. As a result of Cargill's failure to accurately track the acutal hours worked by its employees each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

56. Many employees were not even paid all their non-overtime wages for hours worked in certain workweeks.

57. Futrell and Brown are two of the thousands of employees affected by these pay and timekeeping practices.

58. Instead of paying Futrell and Brown for the hours they actually worked (including overtime hours), Cargill simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Futrell and Brown's actual hours worked and regular pay rates, in multiple workweeks.

59. In some instances, Futrell and Brown were paid portions of the overtime they worked, but the overtime rate was not paid at the proper overtime premium of least 1.5x the agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

60. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

61. Cargill knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

62. Cargill knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

63. Cargill could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

64. Instead of accurately tracking hours and paying employees their overtime, Cargill decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

65. Even to the extent Cargill did pay some overtime to affected employees, Cargill failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Cargill did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

66. It was feasible for Cargill to have its employees and managers report accurate hours so its workers could be paid the full and correct amounts of money they were owed for the work they did for the company.

67. But it chose not to do that.

68. In other words, Cargill pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

69. Futrell and Brown are two of the many Cargill employees who had to shoulder the burden of this decision by Cargill.

70. Futrell was and is a non-exempt hourly employee of Cargill.

71. Futrell regularly works over 40 hours per week for Cargill.

72. Futrell's normal, pre-Kronos hack hours are reflected in Cargill's records.

73. Since the Kronos hack, Cargill has not paid Futrell for his actual hours worked each week.

74. Since the hack took place, Cargill has not been accurately recording the hours worked by Futrell and its other workers.

75. Even though Cargill has had Futrell record and submit hours, Cargill has not issued proper payment for all hours worked

76. Even when Cargill has issued payment to Futrell for any overtime, the overtime is not calculated based on Futrell's regular rates, as required by federal law.

77. Brown was and is a non-exempt hourly employee of Cargill.

78. Brown regularly works over 40 hours per week for Cargill.

79. Brown's normal, pre-Kronos hack hours are reflected in Cargill's records.

80. Since the Kronos hack, Cargill has not paid Brown for his actual hours worked each week.

81. Since the hack took place, Cargill has not been accurately recording the hours worked by Brown and its other workers.

82. Even though Cargill has had Brown record and submit hours, Cargill has not issued proper payment for all hours worked

83. Even when Cargill has issued payment to Brown for any overtime, the overtime is not calculated based on Brown's regular rates, as required by federal and Wisconsin law.

84. Cargill was aware of the overtime requirements of the FLSA.

85. Cargill nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Futrell and Brown.

86. Cargill's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

87. The full overtime wages owed to Futrell, Brown, and the Similarly Situated Workers became "unpaid" when the work for Cargill was done—that is, on Futrell, Brown, and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

88. At the time Cargill failed to pay Futrell, Brown, and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Cargill became liable for all

prejudgment interest, liquidated damages, penalties, and any other damages owed under federal and Wisconsin law.

89. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

90. Even if Cargill made any untimely payment of unpaid wages due and owing to Futrell or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

91. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

92. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Cargill's acts and omissions resulting in the unpaid wages in the first place.

93. Futrell, Brown, and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Cargill under federal and Wisconsin law.

### COLLECTIVE ACTION ALLEGATIONS

94. Futrell and Brown incorporate all other allegations.

95. Numerous individuals were victimized by Cargill's patterns, practices, and policies, which are in willful violation of the FLSA.

96. Based on their experiences and tenure with Cargill, Futrell and Brown are aware that Cargill's illegal practices were imposed on the FLSA Collective.

97. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

98. These employees are victims of Cargill's respective unlawful compensation practices and are similarly situated to Futrell and Brown in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

99. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

100. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

101. Cargill's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

102. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS

103. Futrell and Brown incorporate all other allegations.

104. The illegal practices Cargill imposed on Brown were likewise imposed on the Wisconsin Class members.

105. Numerous other individuals who worked for Cargill were were not properly compensated for all hours worked, as required by Wisconsin law.

106. The Wisconsin Class is so numerous that joinder of all members of the class is impracticable.

107. Cargill imposed uniform practices and policies on Brown and the Wisconsin Class members regardless of any individualized factors.

108. Based on his experience and tenure with Cargill, as well as coverage of the Kronos hack, Brown is aware that Cargill's illegal practices were imposed on the Wisconsin Class members.

109. Wisconsin Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

110. Cargill's failure to pay wages and overtime compensation in accordance with Wisconsin law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Wisconsin Class members.

111. Brown's experiences are therefore typical of the experiences of the Wisconsin Class members.

112. Brown has no interest contrary to, or in conflict with, the members of the Wisconsin Class. Like each member of the proposed class, Brown has an interest in obtaining the unpaid wages and other damages owed under the law.

113. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

114. Absent this action, many Wisconsin Class members likely will not obtain redress of their injuries and Cargill will reap the unjust benefits of violating Wisconsin law.

115. Furthermore, even if some of the Wisconsin Class members could afford individual litigation against Cargill, it would be unduly burdensome to the judicial system.

116. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

117. The questions of law and fact common to each of the Wisconsin Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Wisconsin Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek; and

    b. Whether Cargill's failure to pay overtime at the rates required by law violated Wisconsin law.

118. Brown's claims are typical of the Wisconsin Class members. Brown and the Wisconsin Class members have all sustained damages arising out of Cargill's illegal and uniform employment policies.

119. Brown knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

120. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

## FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO FUTRELL, BROWN, AND THE FLSA COLLECTIVE

121. Futrell and Brown incorporate each other allegation.

122. By failing to pay Futrell, Brown, and the FLSA Collective members overtime at 1.5x their regular rates, Cargill violated the FLSA. 29 U.S.C. § 207(a).

123. Cargill owes Futrell, Brown, and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

124. Cargill owes Futrell, Brown, and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

125. Likewise, Cargill owes Futrell, Brown, and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

126. Cargill knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

127. Because Cargill knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Cargill owes these wages for at least the past three years.

128. Cargill's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

129. Because Cargill's decision not to pay overtime was not made in good faith, Cargill also owes Futrell, Brown, and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

130. Accordingly, Futrell, Brown, and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

**SECOND CAUSE OF ACTION—VIOLATIONS OF WISCONSIN WAGE PAYMENT AND OVERTIME LAW AS TO BROWN AND THE WISCONSIN CLASS**

131. Futrell and Brown incorporate all other allegations.

132. The conduct alleged in this Complaint violates Wisconsin's Wage Payment and Overtime Law, Wis. Stat. §§ 103, 104, 109.01 *et seq.*

133. Cargill was and is an "employer" within the meaning of Wis. Stat. §§ 103.001(6), 104.01(3), and 109.01(2).

134. At all relevant times, Cargill employed Brown and the other Wisconsin Class members as "employees" within the meaning of Wis. Stat. §§ 103.001(5), 104.01(2), and 109.01(1r).

135. Wis. Stat. § 103.02 and DWD 274.03 require an employer like Cargill to pay overtime to all non-exempt employees.

136. Brown and the other Wisconsin Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

137. Wis. Stat. § 103.02 and DWD 274.03 requires overtime to be paid at a rate of no less than 1.5x the employee's regular hourly rate for each hour of working time in excess of 40 each week.

138. Within the applicable limitations period, Cargill had a policy and practice of failing to pay proper overtime to the Wisconsin Class members for their hours worked in excess of 40 hours per week.

139. As a result of Cargill's failure to pay proper overtime to Brown and the Wisconsin Class members for work performed in excess of 40 hours in a workweek, Cargill violated Wis. Stat. § 103.02 and DWD 274.03.

140. Cargill owes Brown and the Wisconsin Class members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

141. Likewise, Cargill owes Brown and the Wisconsin members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

142. Cargill knowingly carried out this illegal pattern and practice of failing to pay the Wisconsin Class members proper overtime compensation.

143. Cargill also owes Brown and the Wisconsin Class members an additional amount of at least 50% of the unpaid wages as liquidated damages. Wis. Stat. § 109.11(2).

144. Brown and the Wisconsin Class members are entitled to recovery their unpaid wages at 1.5x their regular rates of pay, liquidated damages, attorney's fees, costs, interest, and all other legal and equitable relief provided by Wisconsin law.

### RELIEF SOUGHT

Futrell and Brown pray for judgment against Cargill as follows:

- a. For an order certifying a collective action for the FLSA claims;
- b. For an order certifying a class action for the Wisconsin law claims;
- c. For an order finding Cargill liable for violations of federal wage laws with respect to Futrell, Brown, and all FLSA Collective members covered by this case;
- d. For an order finding Cargill liable for violations of Wisconsin wage laws with respect to Brown and all Wisconsin Class members covered by this case;
- e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under the federal wage laws to Futrell, Brown, and all FLSA Collective members covered by this case;
- f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under Wisconsin law to Brown and all Wisconsin Class members covered by this case;
- g. For an equitable accounting and restitution of wages due to Futrell, Brown, and all FLSA Collective and Wisconsin Class members members covered by this case;
- h. For a judgment awarding attorneys' fees to Futrell, Brown, and all FLSA Collective and Wisconsin Class members covered by this case;
- i. For a judgment awarding costs of this action to Futrell, Brown, and all FLSA Collective and Wisconsin Class members covered by this case;
- j. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Futrell, Brown, and all FLSA Collective and Wisconsin Class members covered by this case; and

   k. For all such other and further relief as may be necessary and appropriate.

         Respectfully submitted,

Date: April 15, 2022      **FIEBIGER LAW LLC**

         By: _s/Rolf T. Fiebiger_
         **Rolf T. Fiebiger** (#0391138)
         6800 France Ave. S., Ste. 190
         Edina, MN 55435
         phone (612) 888-6084
         rolf@fiebigerlaw.com

         **Matthew S. Parmet**
         TX Bar # 24069719
         (*pending admission pro hac vice*)
         **PARMET PC**
         3 Riverway, Ste. 1910
         Houston, TX 77056
         phone 713 999 5228
         matt@parmet.law

         **Attorneys for Plaintiffs**