# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### MINNEAPOLIS DIVISION

| | |
|---|---|
| JAMES FUTRELL and CHRIS ROGERS, each individually and on behalf of all others similarly situated, <br><br> v. <br><br> CARGILL, INCORPORATED | Case No. 0:22-cv-00969-JRT-TNL <br> FLSA Collective Action <br> FED. R. CIV. P. 23 Class Action <br><br> Judge John R. Tunheim <br><br> Magistrate Judge Tony N. Leung |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT

Respectfully submitted,

**PARMET PC**
   Matthew S. Parmet
   TX Bar # 24069719
   (*admitted pro hac vice*)
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
   Andrew R. Frisch
   FL Bar # 027777
   (*admitted pro hac vice*)
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

**MORGAN & MORGAN, P.A.**
   Michael Hanna, Esq.
   MI Bar # P81462
   (*admitted pro hac vice*)
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1951
Facsimile: (313) 739-1975
Email: mhanna@forthepeople.com

**FIEBIGER LAW LLC**
   Rolf T. Fiebiger
   MN Bar # 0391138
6800 France Ave. S., Ste. 190
Edina, MN 55435
phone (612) 888-6084
rolf@fiebigerlaw.com

**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

A.     SUMMARY ...................................................................1

B.     FACTUAL & PROCEDURAL BACKGROUND ..........................................1

C.     THE SETTLEMENT AGREEMENT ...................................................4

D.     ARGUMENT & AUTHORITIES ......................................................5

    1.     The Settlement represents a reasonable compromise of this litigation. .......5

       1.1.    Factor 1: The stage of litigation and amount of discovery exchanged. ..7

       1.2.    Factor 2: The experience of counsel. ...................................8

       1.3.    Factor 3: The probability of success on the merits. ............................10

       1.4.    Factor 4: The settlement did not involve overreaching by the employer. ...................................................................11

       1.5.    Factor 5: The settlement is the result of arm's length negotiations based on the merits of the case. ...................................12

    2.     Notice should issue to the proposed collective. .......................................12

    3.     The Court should allow a service award for the named Plaintiffs. ............13

    4.     Plaintiffs' attorneys' fees and litigation expenses are fair and reasonable, and they form part of the agreement between the Parties. .............................15

       4.1.    Factor 1: The amount involved and the results obtained. ....................17

       4.2.    Factor 2: Contingent nature of fees. ...................................18

       4.3.    Factor 3: Complexity of the litigation ...................................19

       4.4.    Factor 4: Experience, reputation, and ability of the attorneys. ............20

       4.5.    Factor 5: Awards in similar cases. ...................................20

    5.     A lodestar cross-check confirms the fee award. .......................................24

    6.     Plaintiffs' counsel is entitled to recover reasonable costs and expenses. ....28

E.     CONCLUSION ...................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Allshouse v. The Joshua Agency, LLC*, No. 1:21-CV-1032, 2023 WL 6166474 (W.D. Ark. Sept. 21, 2023)................................................................................20

*Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa. Nov. 30, 2017) ....................................................................................26

*Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023)............................................................9

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020)................................................................14

*Blanchard v. Bergeron*, 489 U.S. 87, 93, (1989)..........................................................23

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) ................................................................................................28

*Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...........................................22

*Brissette v. Heckler*, 784 F.2d 864 (8th Cir. 1986) ......................................................18

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018)...........................................................................................21

*Brodziak v. Runyon,* 145 F.3d 194 (4th Cir. 1998).......................................................17

*Brown v. Reddy ICE Corp.*, No. 4:14-cv-1786-RLW, 2016 WL 2930933 (E.D. Mo. May 19, 2016)...........................................................................19

*Caligiuri v. Symantec Corp.,* 855 F.3d 860 (8th Cir. 2017)...........................................13

*Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015)...........................................................................................14

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) .........................................................................23

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008 (S.D. Ohio Jan. 25, 2011) .............................................................19

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991)............................................28

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946) .........................................................5

*Daniels v. Prod. Mgmt. Indus., LLC*, No. 6:15-cv-02567, 2018 WL 1954352 (W.D. La. Apr. 20, 2018).............................................................................21

*Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368 (E.D. Mo. May 5, 2021) .........................................................15, 20

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ............................................................28

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) ....................................................................................7

*Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177 (D. Kan. Oct. 11, 2019) ................................................................................................21

*Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) .........................................................................................................9, 22

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ......................................................................7

*Faught v. American Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012) ......................16

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ......................................................15

*Gardner v. HCL Am., Inc.*, No. 20-cv-2340 (ECT/DTS), 2021 WL 6776552 (D. Minn. Oct. 6, 2021) .......................................................................................................6

*Gray v. CJS Sols. Grp., LLC*, Civ. No. 19-1008 (PAM/DTS), 2021 WL 4151007 (D. Minn. Sept. 13, 2021) ........................................................................................6, 13

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................................................................................................27

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023) ..............................................................................9

*Harvey v. Community Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023) ........................................................................................9

*Heffernan Bryant v. Un. Furniture Indus., Inc.*, 1:13-cv-246-SA-DAS, 2017 WL 639320 (N.D. Miss. Feb. 16, 2017) .........................................................................................22

*Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023) ........................................................................................................................9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................15, 17

*Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386 (D. Kan. Jan. 3, 2017) ................................................................................................................21

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ......................................................20

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ..................................28

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ..........................28

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) ..............................28

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ....................................................................28

*In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159 (N.D. Iowa Nov. 9, 2011) ...................................................................... 18, 20, 24

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005)...........................27

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992)...................................27

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ...................................................................................................... 6, 14

*In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013) ......................................................................................16

*Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669 (E.D. Mo. June 25, 2021) ...........................................................................................11

*Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) .......................................................................................19

*Johnson v. Himagine Solutions, Inc.*, No. 4:20-CV-00574-SPM, 2021 WL 2634669 (E.D. Mo. June 25, 2021) ...........................................................................................21

*Johnson v. Thomson Reuters*, No. 18-CV-0070 (PJS/HB), 2019 WL 1254565, at *6 (D. Minn. Mar. 19, 2019)........................................................................................24

*Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018) ........................................................................................................25

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ........................................................ 15, 24

*King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) ...............................................................................................................21

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ...............................7

*Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ........................................................................................................................14

*Legros v. Mud Control Equip., Co.,* No. 15-1082, 2017 WL 925730 (W.D. La. Mar. 6, 2017) ........................................................................................................................21

*Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011) ........................................................................................................................25

*Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514 (E.D.Pa.2015) .................22

*Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015)..21

*Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) ........................................................................... 8, 22

*Matthews v. Priority Energy Servs., LLC*, 2018 WL 1939327 (W.D. Tex. April 20, 2018) ........................................................................................................................21

*McClean v. Health Sys., Inc.*, No. 6:11-cv-03037-DGK, 2015 WL 12426091 (W.D. Mo. June 1, 2015) ................................................................................................... 19

*McClean v. Health Sys.*, No. 6:11-cv-03037-DGK, 2015 WL 12513703 (W.D. Mo. Aug. 4, 2015) .................................................................................................... 14

*Meller v. Bank of the West*, No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562 (S.D. Iowa Sept.10, 2018) .................................................................................................. 21

*Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) .................... 28

*Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389 (W.D. Tenn. Oct. 13, 2020) ................................................................................................. 25

*Murphy v. Ajinomoto Windsor*, No. l:15-cv-00120-JAR, 2018 WL 11312002 (E.D. Mo. Mar. 26, 2018) ................................................................................................. 14

*Netzel v. W. Shore Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955 (D. Minn. May 8, 2017) ................................................................................................... 6

*Oliver v. Centene Corp.*, 2023 WL 3072651 (E.D. Mo. Apr. 25, 2023) ........................ 6

*Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008) .......................................................................................................... 21

*Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) .................................. 28

*Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ................................................................................ 21

*Salome v. Cushman & Wakefield U.S. Inc.*, No. 4:21-cv-01151-RWS, ECF No. 110 (E.D. Mo. Feb. 9, 2023) .............................................................................................. 21

*Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) ............................................................................................. 9, 22

*Sarabia v. Spitzer Indus., Inc.*, 4:17-cv-2092, 2018 WL 6046327 (S.D. Tex. Nov. 19, 2018) ............................................................................................................... 21

*Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894 (D. Minn. July 15, 2021) ......................................................................................................... 10

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000) 17

*Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123 (D. Minn. 2017) ....... 5, 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................... 16

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022). 9

*Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023) 9

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ............................................................................................................... 19

*Tanner v. Empire Financing, Co.*, No. 4:19-cv-0825-SEP, 2020 WL 7316115 (E.D. Mo. Dec. 11, 2020) ..................................................................................................21

*Turner v. Mukasey*, No. 01-CV-1407JMRAJB, 2008 WL 62261 (D. Minn. Jan. 3, 2008) ...............................................................................................................................26

*Wineland v. Case's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ........................14

*Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-cv-1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015).................................................................................................21

*Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ...................................................................................................................9

*Woorduff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) .................................................................................................................22

## Statutes

29 U.S.C. 216.................................................................................................................12

## Other Authorities

U.S. DEPT. OF JUSTICE, THE UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF COLOMBIA, Civil Division, https://www.justice.gov/usao-dc/civil-division ......26

U.S. OFFICE OF PERSONNEL MANAGEMENT, 2023 Locality Pay Area Definitions, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2023/locality-pay-area-definitions/ ........................................................26

U.S. OFFICE OF PERSONNEL MANAGEMENT, Salary Tables, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2023/saltbl.pdf.................................................................................26

USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021).......................................2

## Treatises

American Law Institute, Principles of the Law of Aggregate Litigation (2010) .......16

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th)...............24

## A.   SUMMARY

Plaintiffs request the Court approve the settlement reached in this Fair Labor Standards Act (FLSA) case. The Settlement Agreement represents the culmination of Plaintiffs' and Plaintiffs' counsel's investigation, litigation, and negotiation. It completely resolves Plaintiffs', and the rest of the proposed collective's, claims at issue in this lawsuit. The settlement is fair and reasonable, and it will provide meaningful relief to Plaintiffs and the similarly situated employees of Cargill who opt-into the Settlement, in light of the inherent risks of litigation and trial. Cargill has defended the claims in this lawsuit and continues to deny any wrongdoing, the violation of any federal or state wage-and-hour law, and any damages at issue.

For these reasons, settlement of this matter is in the best interest of Plaintiffs and the proposed collective members. Plaintiffs request the Court approve the Parties' Settlement Agreement, including notice to the proposed collective, and dismiss the alleged claims with prejudice.

## B.   FACTUAL & PROCEDURAL BACKGROUND

Cargill is an American global food corporation based in Minnesota. To track time for some of its hourly employees and calculate overtime, Cargill used Kronos, a cloud-based timekeeping and payroll system operated and maintained by the Ultimate Kronos Group, Inc. ("UKG"). ECF No. 1. Several Cargill subsidiaries also used

Kronos to track time worked and calculate overtime for many of their hourly employees.[1]

On December 11, 2021, the Kronos cloud system became inoperable, which UKG reported was caused by a cyberattack. USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021). As a result of the Kronos cyberattack, Cargill was unable to access any timekeeping or payroll data stored or entered into the Kronos system related to payroll from December 6, 2021, to January 23, 2022 (the "Kronos Outage").

During its Kronos outage, Cargill switched to an alternative timekeeping system that required employees and managers to report time manually. The time entries were submitted through employees' supervisors. Cargill issued off-cycle payments to attempt to pay its employees timely.  It also issued a $250 per employee payment in the midst of its Kronos Outage on December 24, 2021, to account for the inconvenience of the outage. After its Kronos payroll system was restored, Cargill began its reconciliation process, comparing the manually recorded and paid time and wages with the data obtained from Kronos. As a result of Cargill's reconciliation process, it

---

[1] Cargill disputes that employees of its subsidiaries are also employees of Cargill, but for purposes of this settlement only has agreed to treat employees of its subsidiaries as employees of Cargill. *See* Ex. A, Settlement Agmt., at ¶ 1(a). This agreement is without prejudice to Cargill's right to defend against alleged employer status in any other setting. *Id.* at ¶¶ 2, 16.

contends that during the Kronos outage, it had initially underpaid various forms of wages to 8,158 non-exempt employees in the aggregate amount of $4,824,105.00. Any portion of this aggregate amount determined by Cargill to be still owing was paid at the conclusion of the reconciliation. Plaintiffs contend these amounts were not paid on time and that, accordingly, liquidated damages are owed. Cargill paid these reconciliation payments in March and April of 2022. In April 2022, Cargill paid an extra 50% of the reconciliation amounts to each underpaid employee. During its reconciliation process, Cargill also determined that it had net overpaid wages during the Kronos outage to 16,786 non-exempt employees in the aggregate amount of $15,987,824.

On April 15, 2022, Plaintiffs brought claims to recover for any unpaid or delayed wages, including overtime, and liquidated damages owed to Plaintiffs and Cargill's allegedly similarly situated employees as a result of the Kronos Outage. Cargill responded by filing a Motion to Dismiss, and the Parties engaged in significant motion practice. Ultimately, the Court denied the Motion to Dismiss on March 15, 2023. ECF No. 52.

After the Court's ruling on the motion to dismiss, the Parties and their counsel engaged in substantial efforts to resolve this matter. The Parties ultimately agreed to exchange information and participate in mediation to determine if this action could be settled on a global basis. On May 15, 2023, after Cargill had produced a significant amount of data and other information regarding the Kronos Outage and reconciliation

process and reports, the Parties participated in a full-day mediation with Hunter Hughes, a highly regarded labor law neutral with significant experience in labor and employment and wage-and-hour litigation. With the assistance of Mr. Hughes, the Parties were able to achieve significant progress in their discussions. At the end of the mediation, Mr. Hughes submitted a mediator's proposal. That proposal was accepted by both Parties the following day. Since that time, after even further work between the Parties and their counsel, the Parties were able to reach a final Settlement Agreement.

## C.    THE SETTLEMENT AGREEMENT

The Settlement will provide a fair, reasonable, and adequate recovery to all non-exempt employees of Cargill who choose to opt-into it and cash their settlement check. Any of these current or former employees, who are non-exempt individuals working across the United States and who worked statutory overtime and were impacted by the Kronos Outage during the pay periods affected by the Kronos outage, will be notified of, and are eligible to join, the Settlement.

The Settlement Agreement has been filed as an attachment to this motion. Ex. A. Under the Settlement Agreement, Cargill will pay all collective members who were net-underpaid a proportional amount of the unpaid wages as liquidated damages. In addition, Cargill will pay an additional, flat rate to non-exempt employees who worked in New York who has a higher wage payment penalty than the FLSA generally, as well as make a per person payment to employees who were net-overpaid during the Kronos Outage. Significantly, Cargill has also reaffirmed and committed to forego recoupment

of any overpayments made as to each allegedly overpaid employee, a significant value to these collective members.

The Settlement Agreement does not create any complicated claims process. Once the Settlement is approved, it will be administered by an independent settlement administrator, who will mail the proposed notice and checks to all putative collective members. To opt-into the settlement and obtain their settlement payments, putative collective members need only cash or deposit their checks.

Potential collective members who choose to opt-in will be paid from a net settlement fund (administered by the independent settlement administrator) which will be used to pay Plaintiffs, Opt-in Plaintiffs, Plaintiffs' counsel's fees, Plaintiffs' case expenses, and the cost of the settlement administrator.

## D.   ARGUMENT & AUTHORITIES

### 1.   The Settlement represents a reasonable compromise of this litigation.

"When a district court reviews a proposed FLSA settlement, it may approve the settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017) (Wright, J.). "A settlement addresses a bona fide dispute when it reflects a reasonable compromise over issues that are actually in dispute." *Id.* (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)).

In determining whether a settlement is fair and equitable under the FLSA, the Court "may consider a multitude of factors, including (1) the stage of the litigation

and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the Plaintiffs' success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook* at 1126; *Gardner v. HCL Am., Inc.*, No. 20-cv-2340 (ECT/DTS), 2021 WL 6776552, at *1 (D. Minn. Oct. 6, 2021) (Tostrud, J.).

In evaluating an FLSA collective action settlement, the Court need only ensure the "settlement reached in adversarial proceedings represents a fair compromise of a bona fide wage and hour dispute and is fair and reasonable for all who are affected by it." *Gray v. CJS Sols. Grp., LLC*, Civ. No. 19-1008 (PAM/DTS), 2021 WL 4151007, at *1 (D. Minn. Sept. 13, 2021) (Magnuson, J.). "In making a fairness determination, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Netzel v. W. Shore Grp., Inc.*, No. 16-cv-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 8, 2017) (Brisbois, Mag.J.) (internal quotation marks omitted); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid." (internal quotation marks omitted)); *Oliver v. Centene Corp.*, 2023 WL 3072651, at *2 (E.D. Mo. Apr. 25, 2023) ("There is a strong presumption in favor of finding a settlement fair.").

The Parties have fully executed the proposed settlement agreement for review. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but

cannot modify the agreement itself. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement").

### 1.1.   Factor 1: The stage of litigation and amount of discovery exchanged.

This case was settled during litigation between the Parties. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel, as well as the significant and hotly contested motion practice described above. The work undertaken by Plaintiffs and Plaintiffs' counsel included:

- Investigation of Cargill and its management and structure;

- Review of Department of Labor database and records;

- Review of court records for similar or related cases involving Cargill and its related corporate entities;

- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;

- Drafting, filing, and serving Plaintiffs' original and amended complaint;

- Reviewing and responding to Cargill's Motion to Dismiss and legal authorities;

- Drafting and sending Plaintiffs' disclosures and informal discovery;

- Reviewing Plaintiffs and opt-in Plaintiffs' documents and production;

- Interviewing Plaintiffs and potential opt-ins;

- Reviewing Cargill's production, including payroll and time documents and data;

- Analyzing and processing data for Plaintiffs and the potential collective's payroll, including creating a damage model for the data;

- Attending a full-day mediation; and

- Negotiating and finalizing the Parties' Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, certification of the FLSA collective, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, Plaintiffs' damages, Cargill's good faith and willfulness, and decertification.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that the settlement represented a compromise of the range and certainty of damages.

### 1.2.    Factor 2: The experience of counsel.

Here, Plaintiffs' Counsel has significant experience in litigating and resolving not only wage-and-hour claims generally, but also wage-and-hour claims related to the Kronos Outage particularly. *See*, *e.g.*, *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023); *Harvey v. Community Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18,

2023); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023); *Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023); *Stevens v. PepsiCo, Inc.*, No. 7:22-cv-00802-NSR, ECF No. 79 (S.D.N.Y. Apr. 4, 2023); *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC, ECF No. 42 (N.D. Fla. Mar. 27, 2023); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023). Plaintiffs' counsel's experience in these claims has been noted in by courts. *See, e.g., Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (preliminarily approving wage-and-hour class and collective action settlement and recognizing both Morgan & Morgan and Parmet PC as "experienced counsel familiar with the applicable facts and law"), *final approval granted*, ECF No. 102 (Sept. 8, 2023); *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan and Parmet PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation").

Based on their experience and the facts of this case, Plaintiffs' counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Plaintiffs in light of the *Stainbrook* factors. Ex. B, Parmet decl., at § D.

### 1.3. Factor 3: The probability of success on the merits.

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. While Plaintiffs strongly believe in the merits of their claims, Cargill planned significant defenses to liquidated damages. In particular, Cargill intended to argue that no worker had suffered an injury in fact and lacked standing to pursue claims in this Court. Cargill also intended to claim they were victims of the cyberattack that shut down the Kronos system and acted in good faith after the Kronos Outage. If Cargill succeeded, Plaintiffs' FLSA claims would be worth $0. Additionally, Cargill planned to claim its $250 per employee payment in December 2021 should reduce dramatically any liability for liquidated damages.[2] Cargill also intended to claim its extra 50% payment of the reconciliation payment it made to employees in April 2022 further reduced potential liquidated damages liability under the FLSA.[3] In all, when these risks are weighed against the settlement relief obtained here, the settlement is more than fair and reasonable. The Parties therefore could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiffs and the proposed collective. *See Seow v. Miyabi Inc.*, No. 19-cv-2692 (JNE/DTS), 2021 WL 3616894, at *2 (D. Minn. July 15, 2021)

---

[2] If Cargill succeeded on this argument, potential liability would have been reduced by approximately $2.04m, lowering potential FLSA liquidated damages to $2.78m.

[3] If Cargill succeeded on this argument as well, potential liability would have been reduced for by approximately $2.41m for liquidated damages, which would have left only $370,000 in liquidated damages liability under the FLSA, excluding any relief under New York state law.

(Ericksen, J.) ("Plaintiffs maintain that their FLSA claims are strong and can be proven at trial. However, a finding of liability is never assured, and the settlement agreement avoids delay and uncertainty.") The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

### 1.4.    Factor 4: The settlement did not involve overreaching by the employer.

This factor ensures the employer does not overreach during the settlement negotiations. Here, the settlement was reached between highly qualified attorneys (on both sides) and with the assistance of one of the most respected wage and hour mediators in the country. *Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *5 (E.D. Mo. June 25, 2021) ("[T]he Court finds no reason to believe there was any overreaching by the employee in the settlement negotiations, particularly in light of the experience of Plaintiffs' counsel in this area. Additionally, the fact that the parties reached this settlement after a mediation conference with an experienced wage and hour mediator suggests an absence of overreach."). As stated above, the Settlement was reached after the Parties and their counsel attended a full-day mediation with Mr. Hughes, and was then only settled after each Party independently evaluated and accepted Mr. Hughes' proposal at the end of the mediation. No such overreach occurred.

### 1.5.  Factor 5: The settlement is the result of arm's length negotiations based on the merits of the case.

As explained above, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel and mediation with Mr. Hughes. Simply put, there was no fraud or collusion by any participant. Through motion practice before the Court on Cargill's Motion to Dismiss and then the subsequent exchange of time and pay data, along with information about Cargill's Kronos outage, followed by settlement discussions, the Parties hotly debated legal and factual issues. *See* Ex. B, Parmet decl. The Parties also independently researched the legal issues, particularly with regard to the extra payments Cargill made to employees in December 2021 and April 2022.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that the settlement represented a compromise of the range and certainty of damages, and that this Settlement in the best interest of Plaintiffs and the putative collective. Ex. B, Parmet decl.

### 2.  Notice should issue to the proposed collective.

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. 216(b):

> All non-exempt employees, regardless of exact job, position held, or title, employed by Cargill or any direct or indirect subsidiary of Cargill in the United States at any point from December 6, 2021 to January 23, 2022, who were employed in a job position that used Kronos Private Cloud (or

would have used it but for the Kronos Outage) to track their hours worked and who worked more than forty hour in one or more workweeks.

The proposed notice provides information in clear and concise terms on the lawsuit itself, the Settlement collective, the terms and conditions of the Settlement, the relief the Settlement will provide collective members that opt-in, and the procedure for opting into the Settlement by cashing or depositing the enclosed checks.

### 3.    The Court should allow a service award for the named Plaintiffs.

The terms of the Settlement allow each of the named Plaintiffs to receive a reasonable service award to be paid from the gross settlement amount for their role in initiating the investigation and litigation of this matter, serving as claims representatives, responding to counsel's questions, providing documents, reviewing discovery responses and data, participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. The service awards also provide consideration for a general release of all claims related to their employment with Cargill.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of class or collective action litigation. *See*, *e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (upholding $10,000 service award to each named plaintiff in class action settlement); *Gray v. CJS Sols. Grp. LLC*, No. 19-1008 (PAM/DTS), 2021 WL 4151007, at *1 (D. Minn. Sep. 13, 2021) (approving $10,000 service award in FLSA case); *Murphy v. Ajinomoto Windsor*, No. l:15-cv-00120-JAR, 2018 WL 11312002, at *2 (E.D.

Mo. Mar. 26, 2018) (approving $5,000 service award in FLSA case); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case); *McClean v. Health Sys.*, No. 6:11-cv-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award in FLSA case; *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *11 (D. Minn. June 29, 2012) (Montgomery, J.) ("The Settlement occurred before depositions were conducted of class representatives, and before they needed to testify at trial. Given the extent of the class representative' performance and assistance in procuring the Settlement, the Court finds that the proposed service award of $7,500 to the McGregors and $5,000 per abode to the other class representatives is an appropriate service award."), *aff'd*, 716 F.3d 1057 (8th Cir. 2013); *Wineland v. Case's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

"Given [Plaintiffs's] active participation," a service award for each is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020).

**4. Plaintiffs' attorneys' fees and litigation expenses are fair and reasonable, and they form part of the agreement between the Parties.**

A portion of the Settlement is allocated to the payment of Plaintiffs' attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of "the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Plaintiffs' attorneys' fees in this matter are calculated as a percentage-of-the-benefit, which "is appropriate as long as the fees are fair and reasonable." *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021). In reviewing the award, the Court may consider the following factors: (1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases. *Id.* (citing *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017)).

Plaintiffs request the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the fund. Here, the Parties' agreement calls for, and Plaintiffs request, an attorneys' fee award of $840,000, which amounts to 4.6% of the total value of the settlement proposed here ($2,400,000 in new funds and approximately $15,987,824 in forgiven overpayments), far less than the norm for a common fund settlement of this size.[4] Prior to the settlement, Cargill may have had the right to these recoupments in full but for this settlement.[5] Thus, while Plaintiffs' counsel's fees are comprised of 35% of the new settlement funds obtained for the collective, the fees actually amount to only 4.6% of the overall gross settlement amount achieved for the collective, which is the proper measure for examining the benefit to the class or collective.[6] These fees are fair and reasonable in this matter.

---

[4] This amount represents 35% of the new cash portion of the settlement only.

[5] Although Cargill contends it decided to forgive these overpayments, prior to the settlement, that alleged forgiveness was a promise not part of any formal settlement arrangement and not legally binding.

[6] "When using the percentage-of-the-fund approach, courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways. When the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013); *see also Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012) (rejecting argument that value of injunctive relief should not also be considered in addition to cash for purposes of determining class counsel's fees); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained ... courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method ...."); American Law Institute, Principles of the Law of Aggregate Litigation, § 3.13(b) (2010) ("[A] percentage of the fund approach

### 4.1.    Factor 1: The amount involved and the results obtained.

A major advantage of the "percentage of recovery" method is that it considers the results that counsel actually obtained for the collective as opposed to the number of hours expended. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir. 1998) ("the most critical factor in calculating a reasonable fee award is the degree of success obtained." (internal quotations omitted)).

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). The NERA Study relied upon by *Shaw* showed that the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in this case is much higher.

Under the settlement, putative collective members who choose to join the settlement, if allegedly net underpaid or not timely paid will receive direct cash payments representing a substantial recovery on their alleged damages, and if allegedly overpaid will still receive a small cash payment and will, in addition, be formally forgiven for any overpayments that Cargill may have had the right to recoup. Considering the risks of continued litigation, the results obtained for the collective in

---

should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement").

this case were exemplary. The settlement provides Plaintiffs with approximately 54% of their total damages on their best day in court (not including the additional payments to class members depending which state they worked in), as well as the formal forgiveness of 100% of overpayments across the entire payroll outage period.

Under Plaintiffs' theory of the case, Plaintiffs have prevailed in securing valuable compensation for their claims. They acquired a settlement that provides recovery for Plaintiffs and putative collective member. Meanwhile, under Cargill's theory, the putative collective members would be owed nothing.

In all, the parties' settlement provides an excellent recovery to all putative collective members.

### 4.2.    Factor 2: Contingent nature of fees.

Plaintiffs' counsel undertook this representation on a purely contingent basis. Plaintiffs' counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiffs' counsel thereby "cast their fate with the class members." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011). Plaintiffs' counsel should be compensated for the "high risk of loss" that this case would "produce no fee." *See*, *e.g.*, *Brissette v. Heckler*, 784 F.2d 864, 866 (8th Cir. 1986). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases."

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Cargill could have succeeded. Therefore, Plaintiffs' counsel was at great risk for non-payment for all work performed.

This factor thus favors approval of the requested fees.

### 4.3.    Factor 3: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (internal citation omitted); *see also Johnson v. Himagine Sols., Inc.*, No. 4:20-cv-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) ("The [FLSA] case appears to involve complex factual issues, and Plaintiffs' counsel has provided evidence that counsel engage in extensive investigation, legal research and analysis of difficult legal questions and theories…."); *Brown v. Reddy ICE Corp.*, No. 4:14-cv-1786-RLW, 2016 WL 2930933, at *4 (E.D. Mo. May 19, 2016) ("[T]he instant case … involved undecided and complex questions of law and fact under the FLSA."). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment. *McClean v. Health Sys., Inc.*, No. 6:11-cv-03037-DGK, 2015 WL 12426091, at *7 (W.D. Mo. June 1, 2015) (observing, in approving FLSA settlement, that "legal issues that still remain to be addressed at both the decertification and

summary judgment stages are quite complex"). In all, this was a complex FLSA case involving unique questions under the FLSA, which weighs in favor of the approval of fees.

### 4.4.  Factor 4: Experience, reputation, and ability of the attorneys.

Plaintiffs already discussed, at length, their counsel's experience, reputation, and ability—both with respect to wage-and-hour cases generally and with respect to Kronos outage cases in particular. *See infra* § D(1.2). In all, this case "presented particular complexities … Nevertheless, through their extremely skilled and efficient efforts, Class Counsel marshaled sufficient evidence and achieved settlements that were highly favorable to the class members—all within a year and a half o the original case filing." *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011).

### 4.5.  Factor 5: Awards in similar cases.

Plaintiffs' attorneys' fees in this case are well within precedent in the Eighth Circuit, and, in fact, are on the low end of that range. *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("[C]ourts [in the Eighth Circuit] have frequently awarded attorneys' fees ranging up to 36% in class actions."). In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *See, e.g.*, *Allshouse v. The Joshua Agency, LLC*, No. 1:21-CV-1032, 2023 WL 6166474, at *3 (W.D. Ark. Sept. 21, 2023) (40%); *Del Toro v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (35%); *King v. Raineri Const., LLC*, No. 4:14-CV-1828 (CEJ), 2015 WL 631253,

at *4 (E.D. Mo. Feb. 12, 2015) (34%); *Salome v. Cushman & Wakefield U.S. Inc.*, No. 4:21-cv-01151-RWS, ECF No. 110, at *6 (E.D. Mo. Feb. 9, 2023) (approving attorneys' fees of 1/3 in wage-and-hour case); *Johnson v. Himagine Solutions, Inc.*, No. 4:20-CV-00574-SPM, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) (same); *Tanner v. Empire Financing, Co.*, No. 4:19-cv-0825-SEP, 2020 WL 7316115, at *2 (E.D. Mo. Dec. 11, 2020) (same); *Meller v. Bank of the West*, No. 3:18-cv-00033-JAJ-SBJ, 2018 WL 5305562, at *9 (S.D. Iowa Sept.10, 2018) (same), report and recommendation adopted, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018).[7]

---

[7] Courts outside of this Circuit are in accord. *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *11 (E.D. Tenn. Mar. 8, 2018) (approving fees of 40% of the common fund in FLSA collective action settlement), *report and recommendation adopted*, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (same); *Legros v. Mud Control Equip., Co.,* No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *Matthews v. Priority Energy Servs., LLC*, 2018 WL 1939327, at *1 (W.D. Tex. April 20, 2018) (same); *Wolfe v. Anchor Drilling Fluids USA Inc.*, No. 4:15-cv-1344, 2015 WL 12778393, at *3 (S.D. Tex. Dec. 7, 2015) (same); *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 WL 9410399, at *10 (S.D. Tex. May 7, 2008) (same); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *9 (D. Kan. Jan. 3, 2017) ("Historically, our court has approved fee awards in FLSA cases ranging from four per cent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over five million dollars." (internal quotation omitted)); *Sarabia v. Spitzer Indus., Inc.*, 4:17-cv-2092, 2018 WL 6046327, at *4 (S.D. Tex. Nov. 19, 2018) (recognizing that a 40% contingency fee in an FLSA case was "in line with that approved in other FLSA cases"); *Mabry v. Hildebrandt*, No. 14-cv-5525, 2015 WL 5025810, at *3 (E.D. Pa. Aug. 24, 2015) (approving 40% contingency fee in FLSA action and finding that, "[i]n this Circuit, the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45%"); *Enegren v. KC Lodge Ventures LLC*, No. 17-2285-DDC-GEB, 2019 WL 5102177, at *12 (D. Kan. Oct. 11, 2019) ("The court agrees that a 40 percent fee is fair and reasonable in [FLSA collective action] context."); *Daniels v. Prod. Mgmt. Indus., LLC*, No. 6:15-cv-02567, 2018 WL 1954352, at *4 (W.D. La. Apr. 20, 2018)

Courts have also approved of similar percentage-of-the-fund approaches when examining the same general fee structure proposed by Plaintiffs here, where fees are determined as a percentage of the new money not inclusive of the forgiveness to class and collective members. *E.g.*, *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) (awarding 40% of new cash to class and collective, which was 18.69% of common fund); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) (awarding 40% of new cash to collective, which was 35.5% of common fund); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (awarding 40% of new cash to collective, which was 19.66% of common fund); *Henderson v. Johnson Controls Inc.*, No. 2:22-cv-00414, ECF No. 26 (E.D. Wisc. Apr. 20, 2023) (awarding 1/3 of new cash to collective, which was 4% of common fund); *Sanchez v. Stonegate Senior Living, LLC*, No. 3:22-cv-00864-E, ECF No. 21 (N.D. Tex. Feb. 14, 2023) (awarding 40% of new cash to collective, which was 23% of common fund); *see also Harvey v.*

---

(acknowledging that "contingency fee arrangements in this legal community are generally in excess of 33%" and finding 40% of the gross settlement amount for attorneys' fees and costs as "fair and reasonable" in FLSA collective action); *Heffernan Bryant v. Un. Furniture Indus., Inc.*, 1:13-cv-246-SA-DAS, 2017 WL 639320, at *5 (N.D. Miss. Feb. 16, 2017) (approving a request for 40% in fees in FLSA collective action while acknowledging that attorneys' fees in percentage of the fund common fund class cases "commonly fall between a lower 20% and an upper end of 50%"); *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905 (MF), 09-1248 (MF), 09-4587 (MF), 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) ("In common fund cases, fee awards generally range anywhere from nineteen percent to forty-five percent of the settlement fund."); *Lyons v. Gerhard's Inc.*, No. 14-06693, 2015 WL 4378514, at *1 (E.D.Pa.2015) (approving 44% as fees in FLSA common fund because although "on the higher side, but it is not so high as to be unreasonable").

*Community Health Network, Inc.*, No. 1:22-cv-00659-RLM-MJD, ECF No. 104 (S.D. Ind. Sept. 18, 2023) (awarding 1/3 of new cash to class, which was 25.6% of common fund).

Moreover, Plaintiffs' agreement with counsel allowed Plaintiffs' counsel to seek a 40% contingency in the amount of **all monetary value** obtained by way of the claims. Ex. B, Parmet decl., at ¶ 40. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same). Yet Plaintiffs' counsel's request for fees voluntarily limits that request to the new settlement fund, reducing the fees they would be entitled to seek to only new money obtained and not the monetary value released by Cargill. That voluntary reduction from what counsel would be entitled to is evidence of the reasonableness of the fee. *See*, *e.g.*, *Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277, at *3 (W.D. Tenn. May 22, 2012) ("[T]he fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement.").

The fees here are thus well within a reasonable range and should be approved.

**5.    A lodestar cross-check confirms the fee award.**

A contingency award **may** be examined by performing a lodestar cross-check of the fee award. *Keil v. Lopez*, 862 F.3d 685, 691 (8th Cir. 2017). However, the cross-check is "not required." *Id.*

The relatively early settlement of this matter should not be held against Plaintiffs' counsel. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038-MWB, 2011 WL 5547159, at *3 (N.D. Iowa Nov. 9, 2011). Plaintiffs' counsel efficiently resolved this case by working with Plaintiffs, defense counsel, and the mediator, including by exchanging complex damage models and legal authorities, rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121.

Nonetheless, Plaintiffs' total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. B, Parmet decl., at ¶¶ 41-43. Although labeling the hourly rates as "excessive," another court in this District in 2019 ultimately accepted rates of $600 per hour for two lawyers practicing since 2008 and 2009. *Johnson v. Thomson Reuters*, No. 18-CV-0070 (PJS/HB), 2019 WL 1254565, at *6 (D. Minn. Mar. 19, 2019) (Schiltz, J.).

Federal courts in other districts outside of the Northeast and Pacific have recently recognized hourly rates in FLSA cases ranging up from $500 to $600 per hour for "top counsel." *Monroe v. FTS USA, LLC*, No. 208CV02100JTFCGC, 2020 WL 13227389, at *8 (W.D. Tenn. Oct. 13, 2020) (approving $500 to $600 for "Plaintiffs' top counsel" and observing that defendants' counsel charged $800 per hour for "several" attorneys and "$1,000 and $1,330 an hour for work done by four different attorneys"), *aff'd*, 17 F.4th 664 (6th Cir. 2021). Courts in even smaller markets have awarded similar hourly rates. For example, as part of a wage-and-hour settlement in the Western District of Oklahoma, attorneys admitted between 2006 and 2008 were awarded hourly rates ranging from $350 to $475 back in 2011. *Lewis v. The GEO Gp., Inc.*, No. 5:08-cv-00881-M, ECF No. 246 (W.D. Okla. Jun. 14, 2011). Adjusted for inflation,[8] those awards would range from $476.07 to $646.09 today. In the same district, one of Plaintiffs' counsel, Matthew Parmet,[9] was awarded fees at $395 per hour in *Keddy v. OneFlow Energy Servs., LLC*, No. 5:17-cv-00142-C, ECF No. 20 (W.D. Okla. Jan. 9, 2018). Adjusted for inflation, this would be $489.28 today. Mr. Parmet was awarded the same amount in another comparable district, the Western District of Pennsylvania, in 2017, in *Andrews v. Pacific Process Systems., Inc.*, No. 2:16-cv-01135-CB, ECF No. 49 (W.D. Pa.

---

[8] Inflation adjustments throughout this Motion are made using the Bureau of Labor Statistics' CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm.

[9] Plaintiffs have used Mr. Parmet as an example because he represents a reasonable average of the experience level of Plaintiffs' counsel. Other members of Plaintiffs' counsel's team have been practicing even longer.

Nov. 30, 2017), which would be adjusted to $491.65 today. Likewise, another useful metric is the *Fitzpatrick* (formerly *Laffey*) matrix. *Turner v. Mukasey*, No. 01-CV-1407JMRAJB, 2008 WL 62261, at *7 n.9 (D. Minn. Jan. 3, 2008) (using the *Fitzpatrick/Laffey* matrix, among other factors, to determine reasonable attorneys' fee rates). Under the *Fitzpatrick* matrix, the rate for an attorney with 13 years' experience (like Mr. Parmet) is $664 per hour. U.S. DEPT. OF JUSTICE, THE UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF COLOMBIA, Civil Division, https://www.justice.gov/usao-dc/civil-division (last accessed Jun. 4, 2023). However, because the *Fitzpatrick* matrix is designed for the DC area, it should be adjusted for the District market area. For 2023, the Office of Personnel Management (OMP) assigned a locality pay adjustment for both the Minneapolis-St. Paul, MN-WI and DC areas. OMP, 2023 Locality Pay Area Definitions, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2023/locality-pay-area-definitions/ (last accessed Jun. 4, 2023). The DC area has a 32.4% increase above baseline. *See* OPM, Salary Tables, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2023/saltbl.pdf (last accessed Jun. 4, 2023). Meanwhile, the Minneapolis-St. Paul area has a 4.85% increase above baseline, for a difference of 27.55%. Adjusting the *Fitzpatrick* matrix's $664 hourly rate for this District's market would result in an hourly rate of $481.09 for Mr. Parmet.

Plaintiffs do not propose to settle the issue of what hourly rate should be used in this District for any specific attorneys in any specific case at this time. Plaintiffs

present this information, rather, to demonstrate their proposed attorneys' fees are well in line with a reasonable fee award. Plaintiffs' counsel estimates that, to date, a total of at least 380 hours have been devoted by the attorneys working on this case. Ex. B, Parmet decl. Under Plaintiffs' counsel's estimates, using a mid-range value of $480 for all attorneys, this equates to a total current lodestar of $182,400.

Critically, even after approval, Plaintiffs' counsel's time in this matter will continue to increase. Plaintiffs' counsel will spend additional time fulfilling Plaintiffs' obligations under the settlement agreement, administering the settlement, and responding to Plaintiffs' and putative collective members' inquiries. These efforts may easily match or surpass the time Plaintiffs' counsel has already devoted to this matter. Using the same mid-range hourly rate of $480, at a reasonable estimate total hours of a minimum of 440 hours after administration, Plaintiffs' counsel's lodestar would be at $211,200. *E.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiffs' counsel's current lodestar has a 4.6 multiplier, which is already within the range of reasonableness and will continue to decrease as this case moves to completion (to 4 based on Plaintiffs' counsel's estimates above). *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug.24, 1992) (6

multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio Jan. 10, 2011) (5.3 multiplier).

### 6.    Plaintiffs' counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Plaintiffs' counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case.

| Cost | Amount |
|------|--------|
| Court Fees | $ 402.00 |
| Service | $ 65.00 |
| Copies | $ 57.50 |
| Postage | $ 23.34 |
| Mediation | $ 10,000.00 |
| Admissions | $ 300.00 |
| Travel and Incidental | $ - |
| Legal Research | $ 363.60 |
| Certificates of Good Standing | $ - |
| | |
| **TOTAL** | **$ 11,211.44** |

## E.    CONCLUSION

For these reasons, the Court should approve the Settlement Agreement reached by the Parties.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
(*admitted pro hac vice*)
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**Andrew R. Frisch**
FL Bar # 027777
(*admitted pro hac vice*)
**MORGAN & MORGAN, P.A.**
8581 Peters Road, 4th Floor

Plantations, FL 33324
Phone: (954) WORKERS
Email: afrisch@forthepeople.com

**Rolf T. Fiebiger**
MN Bar # 0391138
**FIEBIGER LAW LLC**
6800 France Ave. S., Ste. 190
Edina, MN 55435
phone (612) 888-6084
rolf@fiebigerlaw.com

**Michael N. Hanna**
MI Bar # P81462
**MORGAN & MORGAN, P.A.**
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 251-1399
mhanna@forthepeople.com

**Attorneys for Plaintiffs**